2012 COA 30

**Shelly CROWELL, Petitioner,**

v.

**INDUSTRIAL CLAIM APPEALS OFFICE of the State of Colorado, Denver West Marriott, and New Hampshire Insurance Company, Respondents.**

No. 11CA0528.

Colorado Court of Appeals, Div. V.

Feb. 16, 2012.

Rehearing Denied Aug. 2, 2012.*

Anderson Hemmat & Levine, LLC, Jordan S. Levine, Denver, Colorado, for Petitioner.

No Appearance for Respondent Industrial Claim Appeals Office.

Law Office of Steven J. Picardi, P.C., Steven J. Picardi, Parker, Colorado, for Respondents Denver West Marriott, and New Hampshire Insurance Company.

Opinion by Judge NEY.**

¶ 1 In this workers' compensation proceeding, Shelly Crowell (claimant) seeks review of a final order of the Industrial Claim Appeals Office (Panel) determining that the penalty imposed against Denver West Marriott and its insurer, New Hampshire Insurance Company (collectively employer), was properly awarded based on a one-time violation, rather than a continuing violation. We set aside the order and remand for reconsideration of the penalty amount and imposition of a daily penalty based on a continuing violation.

## I. Background

¶ 2 Claimant suffered a deflated breast implant as a result of a 2008 industrial injury and had the implant surgically replaced in 2009. She gradually developed firmness, distortion, and discomfort in the breast, and, on March 31, 2010, an authorized treating physician (ATP) recommended further surgery to again replace the implant.

¶ 3 Employer was required to respond within seven business days of its receipt of the ATP's request. Dep't of Labor & Emp't Rules 16–9(B), 16–10, 7 Code Colo. Regs. 1101–3. It did so on April 1, denying the request "for non-medical reasons, as the proposed surgery is cosmetic in nature, and not designed to cure or relieve the effects of the industrial injury." As we later conclude, the

---

** Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2011.

essence of this response was that the surgery was elective and not medically required.

¶ 4 It is undisputed that employer sent this letter without first obtaining a medical review by a different physician or other health care professional. *See* Dep't of Labor & Emp't Rule 16–10(A), 7 Code Colo. Regs. 1101–3. It is also undisputed that, as of the close of business on April 6, 2010—seven days after the ATP's request—employer had not yet obtained a medical review of the request by a different physician or other health care professional.

¶ 5 On June 7, 2010, claimant, through counsel, filed an application for hearing and notice to set hearing on the issue of, among other things, "authorization of the breast reconstructive surgery as recommended by [the ATP]."

¶ 6 On October 6, 2010, claimant's requested hearing occurred before the administrative law judge (ALJ). The following day, the ALJ issued an order disagreeing with employer and determining that employer was liable for the second surgery. The ALJ concluded that "whether the surgery is purely cosmetic is a medical determination," rather than a nonmedical determination as employer alleged, and therefore pursuant to Department of Labor & Employment Rule 16–10(B), 7 Code Colo. Regs. 1101–3, employer was required to have another physician review the documentation submitted with the preauthorization request. Thus, the ALJ concluded that employer violated Rule 16–10(B).

¶ 7 The ALJ imposed a penalty of $500 for employer's violation. However, the ALJ concluded that the failure to obtain medical review constituted only a one-time failure to act, and therefore "the provision that each day is a separate and distinct violation [§ 8–43–305, C.R.S. 2011] does not apply." The Panel affirmed.

¶ 8 Claimant contends that the Panel erred in affirming the ALJ's conclusion that employer committed only a one-time violation. Claimant asserts that under the plain language of section 8–43–305, employer's failure to obtain medical review constituted a continuing violation as a matter of law. Claim-

ant thus contends in her opening brief that the penalty should be awarded "from April 6, 2010, until the date [the requested] surgery was approved [by the ALJ], on October 7, 2010"—a time period of 184 days.

¶ 9 Under the circumstances of this case, we agree with claimant that, as a matter of law, employer violated Rule 16–10(B) for a time period lasting 184 days, and that the ALJ and the Panel erred in determining otherwise. Nevertheless, we conclude that the case must be remanded for the ALJ to reconsider the amount of the penalty over this time period.

## II. Law and Standard of Appellate Review

¶ 10 It is the intent of the general assembly that the "Workers' Compensation Act of Colorado" be interpreted so as to assure the quick and efficient delivery of disability and medical benefits to injured workers at a reasonable cost to employers, without the necessity of any litigation, recognizing that the workers' compensation system in Colorado is based on a mutual renunciation of common law rights and defenses by employers and employees alike. § 8–40–102(1), C.R.S.2011; *see Specialty Rests. Corp. v. Nelson,* 231 P.3d 393, 398 (Colo.2010).

### A. Duration of Violation

¶ 11 Section 8–43–305 provides that "[e]very day during which any employer ... fails to comply with any lawful order ... shall constitute a separate and distinct violation thereof." The term "order" as used in this statute includes a procedural rule. § 8–40–201(15), C.R.S.2011; *see Spracklin v. Indus. Claim Appeals Office,* 66 P.3d 176, 177 (Colo. App.2002).

¶ 12 The purpose of section 8–43–305 is to address "ongoing conduct." *Spracklin,* 66 P.3d at 178. And when conduct is ongoing, imposition of a daily penalty is required. *Pueblo Sch. Dist. No. 70 v. Toth,* 924 P.2d 1094, 1097, 1100 (Colo.App.1996) (delay in paying bill for 645 days resulted in "645 separate offenses," and pursuant to predecessor statute to section 8–43–305, imposition of the penalty at a "daily rate" is "mandated").

¶ 13 Thus, we must decide whether the failure to provide medical review under Rule 16–10(B) is, as a matter of law, the type of ongoing conduct that triggers application of this continuing violation provision. We conclude that it is. In our view, the difference between a one-time violation and a continuing violation hinges on whether the violation is subject to being cured by subsequent action. *See, e.g., Kennedy v. Indus. Claim Appeals Office*, 100 P.3d 949, 949–50 (Colo. App.2004) (noting, in factual recitation, that ALJ imposed a one-time penalty for failure to obey order to attend medical examination scheduled for particular date, but not addressing issue of propriety of one-time penalty); *see also In re Marriage of Webb*, 284 P.3d 107, 110 (Colo.App.2011) (noting, in contempt context, "a one-time violation [is] incapable of being purged"; where mother, in violation of court order, had taken child to emergency room without consulting father, mother "could not undo what she had done").

¶ 14 A continuing violation—which typically includes a delay in acting—can be cured by simply taking the required action. *See* § 8–43–304(4), C.R.S.2011 (allowing alleged violator chance to cure violation and possibly avoid penalty); *see also* Dep't of Labor & Emp't Rule 16–10(F), 7 Code Colo. Regs. 1101–3 (penalties may be imposed for payer's "[u]nreasonable delay or denial of prior authorization"). By way of example, continuing violations justifying separate penalties for each day have consisted of failures to pay, provide medical treatment, file an admission, and disclose information. *See, e.g., Associated Bus. Prods. v. Indus. Claim Appeals Office*, 126 P.3d 323, 324, 326 (Colo.App.2005) (awarding penalty of $300 per day, for total of $24,900, for nonpayment of medically necessary cell phone bill); *Pena v. Indus. Claim Appeals Office*, 117 P.3d 84, 86 (Colo.App. 2004) (imposing penalties of $100 per day for failure to provide medical treatment); *Human Res. Co. v. Indus. Claim Appeals Office*, 984 P.2d 1194, 1196 (Colo.App.1999) (affirming penalty of $100 per day, for a total of $14,300, for failure to timely file admission of liability); *Diversified Veterans Corporate Ctr. v. Hewuse*, 942 P.2d 1312, 1313 (Colo. App.1997) (imposing $50 per day penalty for failure to provide medical report to claimant);

*Toth*, 924 P.2d at 1096, 1100 (awarding penalties of $10 per day for a 645–day delay in paying medical benefits because there were "645 separate offenses"). Any of these failures to act can be cured, and therefore the failure to act can be considered a delay in acting. Thus, a violation of Rule 16–10(B) is continuing for purposes of section 8–43–305 because medical review could occur sometime after the deadline. Accordingly, under section 8–43–305, "every day during which" a payer fails to provide medical review pursuant to Rule 16–10(B) "shall constitute a separate and distinct violation" for which penalties may be assessed.

¶ 15 Furthermore, we agree with claimant that the use of "shall" in section 8–43–305 indicates that when there is ongoing conduct, the continuation of the penalty is mandatory, rather than discretionary. *See Toth*, 924 P.2d at 1100 (mandating imposition of the penalty at a "daily rate" where violation was continuing); *see also Allison v. Indus. Claim Appeals Office*, 884 P.2d 1113, 1119 (Colo.1994) ("shall" in constitutional provision is mandatory); *Aren Design, Inc. v. Becerra*, 897 P.2d 902, 904 (Colo.App.1995) (interpreting "shall" in statute as mandatory because it "is presumed to indicate a mandatory requirement"); *cf. EZ Bldg. Components Mfg., LLC v. Indus. Claim Appeals Office*, 74 P.3d 516, 518 (Colo.App.2003) ("'shall' creates a presumption that a stated requirement is mandatory," but holding that term was not mandatory where there was substantial compliance with insurance cancellation requirements); *but see Aviado v. Indus. Claim Appeals Office*, 228 P.3d 177, 182 (Colo.App.2009) (phrase using "shall" in time limitation placed on court is "directory and not mandatory or jurisdictional").

## B. Amount of Penalty

¶ 16 The amount of the penalty the ALJ may impose is addressed in section 8–43–304(1), C.R.S.2011. A prior version of the statute provides that the daily penalty shall not exceed $500. Ch. 219, sec. 35, § 8–43–304(1), 1991 Colo. Sess. Laws 1323–24. However, for "conduct occurring on or after" August 11, 2010, the penalty has been increased to a $1000 maximum daily penalty.

Ch. 287, secs. 1, 3(2), 2010 Colo. Sess. Laws 1340–41.

 ¶ 17 An ALJ has discretion to determine the amount of the penalty, provided that the amount does not exceed the legislatively enacted penalty range. *Associated Bus. Prods.*, 126 P.3d at 325.

### C. Standard of Review

¶ 18 Because the issue of the duration of the penalty under section 8–43–305 is a question of law, and we have now set forth the legal test to determine whether a violation is continuing, we review the ALJ's and Panel's conclusions of law de novo. *See Specialty Rests. Corp.*, 231 P.3d at 397. We likewise utilize de novo review to determine the applicable penalty ranges under the different versions of section 8–43–304(1).

 ¶ 19 We review the determination of the amount of the penalty for an abuse of discretion. *See Associated Bus. Prods.*, 126 P.3d at 325.

### III. Analysis

 ¶ 20 The ALJ and Panel erroneously concluded that employer failed to comply with Rule 16–10(B) on only the single day on which it responded inappropriately to the preauthorization request. *See Specialty Rests. Corp.*, 231 P.3d at 397. Because employer could have remedied the violation at any time by simply providing the medical review, employer's violation was continuing. *See* § 8–43–304(4); *Toth*, 924 P.2d at 1100. Thus, on remand, the ALJ shall impose a penalty at a daily rate. *See* § 8–43–305; *Toth*, 924 P.2d at 1100.

¶ 21 The order of the Panel is set aside and the case is remanded for the ALJ's reconsideration of the penalty for the continuing violation, reconsideration of the amount of the penalty, and imposition of a penalty at a daily rate, in the ALJ's discretion, based on the continuing violation as authorized by Ch. 219, sec 35, 1991 Colo. Sess. Laws 1323–24, for the period April 6, 2010 through August 10, 2010, and as author-

ized by section 8–43–304(1), C.R.S.2011 for the period beginning August 11, 2010.

Judge CARPARELLI and Judge FURMAN concur.